IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AGILA M.,[1]
    Plaintiff,

v.                                      Civil No. 3:21-cv-00740-REP

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits and supplemental security income under the Social Security Act ("Act"). At the time of her application date, Plaintiff was forty-five years old and previously worked as a customer service representative. (R. at 116, 258.) Plaintiff alleges she is unable to work due to fibromyalgia, depression, insomnia, high blood pressure, degenerative disc disease and arthritis, and high cholesterol. (R. at 256.)

On September 29, 2020, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 12.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year

1

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 16) be DENIED, Defendant's Motion for Summary Judgment (Def.'s Mem. Supp. Summ. J. (ECF No. 18) ("Def.'s Mem.")) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income on April 16, 2019, alleging disability beginning February 24, 2019. (R. at 97, 176.) The SSA denied Plaintiff's claims initially and again upon reconsideration. (R. at 165, 188.) Plaintiff requested a hearing before an ALJ, and a hearing was held on August 19, 2020. (R. at 35-77, 202.) On September 29, 2020, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 15-30.) On September 20, 2021, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g) and § 1383(c).[3]

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the

---

of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for supplemental security income.

kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the

3

claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 17-29.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 636 (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 24, 2019 (i.e., the alleged onset date). (R. at 17.) At step two, the ALJ determined that Plaintiff had the following severe impairments pursuant to 20 C.F.R. §§ 404.1520(c) and 416.920(c): fibromyalgia, obesity, dysfunction of the major joints, and discogenic

4

and degenerative disorders. (R. at 18.) At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. at 21.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 21-22.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.97(b), but with the following limitations:

> [Plaintiff] can stand and/or walk for a total of 4 hours in an 8-hour workday. [Plaintiff] can occasionally balance, stoop, kneel, crouch and climb ramps and stairs; but can never crawl or climb ladders, ropes, or scaffolds. [Plaintiff] can never be exposed to hazards, such as unprotected heights or moving mechanical parts.

(R. at 21-22.)

The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," in accordance with the regulations. (R. at 22.) The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s)" in accordance with the regulations. (R. at 22). Based on her residual functional capacity findings, the ALJ concluded at step four that Plaintiff could perform past relevant work as a customer service representative and human resources clerk because these jobs do "not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity." (R. at 28.)

Although not required, the ALJ proceeded to step five and found that there are other jobs in significant numbers in the national economy that Plaintiff can perform within the light work category. (R. at 28-29.) As part of this process, the ALJ considered the testimony of a vocational

expert, who testified that given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform the requirements of occupations such as final inspector, final assembler, and racker. (R. 28-29.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (R. at 29-30.)

## IV. ANALYSIS

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because she failed to evaluate the medical opinion evidence in accordance with the regulations. (Pl.'s Mem. Supp. Summ. J. 1 (ECF No. 19) ("Pl.'s Mem.").) Specifically, Plaintiff argues that the ALJ erred by improperly evaluating the medical opinions submitted by Plaintiff's primary care physician, Anna Vedina, M.D. ("Dr. Vedina"). (Pl's Mem. at 1.) Defendant responds that the ALJ satisfied the requirements for evaluating medical opinion evidence, and substantial evidence supports her findings. (Def.'s Mem at 15-19.) For the reasons that follow, this Court finds that the ALJ properly assessed the medical opinion evidence in accordance with the regulations, and substantial evidence supports the ALJ's residual functional capacity findings.

### A. The ALJ Did Not Err When She Evaluated the Medical Opinion Evidence and Substantial Evidence Supports Her Findings.

*1. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017.*

For claims filed on or after March 27, 2017, revised regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The revised regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and

evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a), (b); 416.920c(a).

Under the regulations,[4] the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion [,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. §§ 404.1520c; 416.920c(c). Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id*. §§ 404.1520c(b)(2); 416.920c(b)(2). Supportability and consistency are explained in the regulations as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2); 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the

---

[4] Plaintiff filed her disability claim after March 27, 2017. As a result, Section 404.1520c, which sets forth revised rules regarding the assessment of medical opinion evidence, applies here.

7

ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3).

    2. *Dr. Vedina's Medical Opinions.*

Dr. Vedina is Plaintiff's primary care physician. (R. at 355.) Dr. Vedina had treated Plaintiff since April 15, 2011. (R. at 355.) On May 28, 2019, Dr. Vedina completed a Medical Source Statement in which she provided her medical opinions on Plaintiff's ability to perform work-related activities. (R. at 355-61.) According to Dr. Vedina, Plaintiff's fibromyalgia and lumbar radiculopathy caused her to have a reduced range of motion in her shoulders, back, and hips, reduced grip strength, sensory changes, impaired appetite, tenderness in her shoulders, muscle weakness, trigger points, and muscle spasms. (R. at 355.) When asked to identify the clinical findings and objective signs that supported her diagnoses, Dr. Vedina affirmed that Plaintiff was "currently on pain med (fentanyl patch), planning on going to [physical therapy], [and] had trigger point injections in [the] past." (R. at 356.)

Dr. Vedina noted that: (1) the objective signs of Plaintiff's condition included multiple tender points and spondyloarthropathies; and (2) Plaintiff's pain was in her shoulders and lower back and rated it as moderate and severe in intensity. (R. at 356-57.) Dr. Vedina remarked that sitting and walking aggravated or increased the severity of Plaintiff's condition. (R. at 357.) She further opined on Plaintiff's edema, noting that Plaintiff was required to elevate her legs at intervals throughout the day, specifically at knee-height for a few hours each day. (R. at 357.) However, Dr. Vedina noted that Plaintiff did not require assistive walking devices or other aids to assist in her functioning. (R. at 358.)

Dr. Vedina then assessed Plaintiff's exertional limitations and concluded that Plaintiff's symptoms were severe enough to limit her from performing full time employment. (R. at 359-61.)

8

Dr. Vedina opined that Plaintiff: (1) could not perform a job with a sit/stand and/or walk option eight hours per day without needing to lie down to relieve her pain; (2) had, at most, the ability to sit and stand or walk for one hour in an eight-hour workday; and (3) could occasionally lift and/or carry up to ten pounds, but never more than that. (R. at 359-60.) Dr. Vedina noted Plaintiff could not use her feet for repetitive movements in operating foot controls due to numbness in her feet. (R. at 360.) While Dr. Vedina estimated that Plaintiff could occasionally bend and reach above shoulder level, Plaintiff could never squat, crawl, or climb. (R. at 360.) She had no environmental restrictions. (R. at 360.) Finally, Dr. Vedina noted that Plaintiff would not require frequent, unscheduled breaks to lie down during the workday, but that her condition was "not improving" and would cause her to have frequent and unpredictable absences from work. (R. at 355, 361.)

    *3. Analysis of the ALJ's Evaluation of Dr. Vedina's Opinion.*

The ALJ summarized Dr. Vedina's opinion and found her opinion "less persuasive." (R. at 27.) The ALJ reasoned that:

> [T]he limitations offered are not supported by an explanation or by Dr. Vedina's own examination findings including those showing only trace edema occasionally or [Plaintiff's] report in February 2020 that her edema was improved and she was no longer taking medication for it. Further [Dr. Vedina's] medical opinion is not consistent with the other objective findings showing no lasting deficits of gait, strength, or reflexes or [Plaintiff's] treatment history including being maintained on largely the same medications since her alleged onset date and not pursuing physical therapy despite the recommendation of multiple evaluating and treating providers, as discussed in detail above.

(R. at 27) (internal citations omitted.)

In challenging the ALJ's treatment of Dr. Vedina's medical opinions, Plaintiff appears to argue that the ALJ failed to properly "provide any explanation as to how Plaintiff's occasional trace edema did not support Dr. Vedina's opinion." (Pl.'s Mem. at 9.) Plaintiff proceeds to point

9

to medical treatment notes from 2019 that she claims supports Dr. Vedina's opinions regarding Plaintiff's functional limitations. (Pl.'s Mem. at 9, citing R. at 334-340, 451-504.) Plaintiff then charges the ALJ with: (1) focusing only on Plaintiff's occasional edema; (2) ignoring "certain portions of the record that would support the determination that [Plaintiff] was disabled;" and (3) mischaracterizing the evidence. (Pl.'s Mem. at 9-10) (case citation omitted) (Pl.'s Reply to Def.'s Mem. Supp. Summ. J. at 2-3, (ECF No. 19) ("Pl.'s Reply").)

Plaintiff's argument misunderstands the standard by which this Court is to review the ALJ's decision. Plaintiff is tasked with the burden to both produce evidence and prove that she is disabled under the Act. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The undersigned is charged with reviewing the Commissioner's decision to deny Plaintiff's application to determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence. *Mascio v. Colvin*, 780 F.3d 632, 634 (referencing *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). The substantial evidence standard "presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, *Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays v. Sullivan*,

907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09cv412-FDW-DSC, 2010 U.S. Dist. LEXIS 142595, *9 (W.D.N.C. Aug. 20, 2010).

Therefore, the issue before this Court is whether the ALJ's finding that Plaintiff is not disabled is properly explained and supported by substantial evidence and that such decision was reached based upon a correct application of the relevant law. As stated above, the regulations require that the ALJ explain how she considered the consistency and supportability of the medical opinion and why—based on the evidence—the ALJ reached the particular conclusion she did as to the persuasiveness of the opinion. *See* 20 C.F.R. §§ 404.1520c(a)–(b); 416.920c(a)–(b). The ALJ satisfied the regulations when she found Dr. Vedina's opinion "less persuasive," and substantial evidence supports her findings. (R. at 27.)

First, the ALJ explicitly addressed how Dr. Vedina's opinion was not supported and not consistent with the medical evidence. The ALJ found that Dr. Vedina assessed her opinions without sufficiently explaining how she came to her conclusions. (R. at 27.) For instance, in weighing Dr. Vedina's findings, the ALJ pointed out how Plaintiff's treatment notes indicated mostly normal physical examinations, including normal gait, strength, and reflexes, as well as a consistent medication regimen. (R. at 27.) Nonetheless, Plaintiff argues that: (1) the ALJ "cherry-pick[ed] examination results favorable to her ultimate conclusion[;]" (2) while the ALJ "focuse[d] on benign results, reading the record as a whole paints a more serious picture[;]" and (3) the ALJ failed to build and accurate and logical bridge from the evidence to her conclusion that would enable this Court to conduct a meaningful review of the evidence. (Pl.'s Mem. at 10) (*see also* Pl.'s Reply at 4-5.) To support her challenge, Plaintiff points to treatment notes documenting diffuse tenderness and various functional difficulties caused by her edema, back and knee pain, and foot and ankle weakness. (Pl.'s Mem. at 10-11.)

However, a review of the ALJ's decision shows that the ALJ did not simply ignore evidence or "cherry-pick" benign findings from selected treatment notes. (*See* Pl.'s Reply at 2.) In her decision, the ALJ found that Dr. Vedina's opinion was not consistent with the remainder of the medical record and pointed to contradictions between Dr. Vedina's opinions and the clinically acceptable evidence that showed normal examination findings. (R. at 27.) Indeed, the ALJ: (1) carefully and thoroughly summarized Plaintiff's medical treatment history; and (2) acknowledged the objective medical findings, explaining that "the medical evidence shows relatively mild degenerative changes and no positive findings on EMG studies and clinical evidence of tenderness and decreased range of motion in places with some findings of decreased sensation of the lower extremities but no lasting deficits of gait, strength, or reflexes." (R. at 22-25.) The ALJ also cited to imaging from February 2019, which showed facet arthropathy in the lower lumbar spine, and to an MRI in March 2019, which revealed degenerative disc disease at L3-4 with mild compression of the left L3 nerve root. (R. at 23, citing R. at 331-32, 344.) Moreover, the ALJ wrote that Plaintiff's physiatrist "indicated that there was minimal degenerative disc disease and no neural foraminal (NF) impingement." (R. at 23, citing R. at 439.) However, imaging from "late 2019 showed mild right knee osteoarthritis and bilateral calcaneal spurs and arthritis to the midfoot." (R. at 23, citing R. at 515, 530.)

The ALJ then summarized the objective findings on physical examination, including those from Dr. Vedina and Plaintiff's orthopedist, Joshua P. Herzog, M.D. ("Dr. Herzog"). (R. at 23.) She explained how Dr. Herzog noted Plaintiff had "good range of motion and good strength throughout the bilateral extremities" in March 2019 and had "acceptable motion of the neck and back with no instability or atrophy." (R. at 23, citing to R. at 328.) Plaintiff was found to have "had intact sensation from L2-S1," but "decreased sensation in the left L5 distribution." (R. at 23, citing

R. at 328.) Plaintiff then presented to Dr. Vedina in May 2019 and reported upper and lower-back musculoskeletal pain bilaterally, as well as numbness in her feet and hands. (R. at 23, citing R. at 334.) Dr. Vedina examined Plaintiff and found that she had full strength in her bilateral lower extremities. (R. at 336.) The ALJ cited to other treatment notes in which Plaintiff was observed to have had full bilateral upper and lower extremity strength on multiple occasions. (R. at 23, citing R. at 330, 336, 439, 443, 448.) Moreover, the ALJ acknowledged instances in which Plaintiff displayed diffuse tenderness to palpation but remarked that she had "only mildly limited range of motion of the cervical spine and near full range of motion of the shoulders. She also had near full flexion of the lumbar spine." (R. at 23, citing R. at 443.)

Further, the ALJ explained that Plaintiff had not used any assistive devices that limited the functioning of both upper extremities, nor did she have any lasting strength deficits. (R. at 21.) Plaintiff continued to have a normal gait, no motor or sensory deficits, and normal pulses of the lower extremities "despite sensory deficits of the bilateral feet and decreased ankle range of motion." (R. at 24, citing R. at 503, 531.) By December 2019, Dr. Vedina noted that Plaintiff had "some crepitus in the right knee with extension," and that she wore a right foot boot. (R. at 24, citing R. at 497.) However, in February 2020, Dr. Vedina's treatment notes clearly indicate that Plaintiff reported her edema had improved, she was no longer taking medication for it, and she was found to have "had no edema on examination," (R. at 24, citing R. at 490-91.)

In addition to the imaging and physical examinations, the ALJ considered Plaintiff's prescribed treatment protocol. (R. at 24.) She noted that Plaintiff underwent injections in her right ankle and treated her symptoms with medication. (R. at 25.) Specifically with regards to Plaintiff's medications, the ALJ noted that, despite her testimony that she experienced negative side effects, Plaintiff did not request a change to her medications, but instead "consistently asked for refills of

13

her patch and an increase in her Gabapentin." (R. at 24, citing R. at 340, 488, 494, 496-97.) The ALJ also noted that Plaintiff was recommended for physical therapy or a "similar formal exercise program by 5 different health care providers, including her primary care provider, the orthopedist, the rheumatologist, the physiatrist, and the podiatrist," but that Plaintiff had not "pursued a course of physical therapy." (R. at 24) (internal citations omitted.)

Further, the ALJ discussed Plaintiff's two emergency room visits after falling on multiple occasions. (R. at 24-25, citing R. at 513.) After considering the treatment notes related to these falls, the ALJ concluded that Plaintiff's "reported falling has been related to her activities at the time of falling and not due to a loss of strength or sensation or other issues caused by her medical conditions." (R. at 25.) Moreover, Plaintiff did not present to the emergency room "on a frequent basis outside of her visits related to falling." (R. at 25.)

Finally, the ALJ considered Plaintiff's subjective statements, including those made to her medical providers at appointments, during her hearing, and on submitted documents. (R. at 18-23.) The ALJ noted that Plaintiff reported that her pain in her back, leg, and knees prevented her from walking ten to fifteen minutes before needing to stop and rest for one to two hours. (R. at 22, citing R. at 291.) She also experienced "physical difficulty with personal care and that she [needed to have] help with cooking cleaning and laundry." (R. at 25 citing R. at 287-289.) According to Plaintiff, she is uncomfortable sitting or standing for a long period of time, and that she had to lie down for most of the day. (R. at 22, citing R. at 286.) The ALJ accounted for these statements in formulating Plaintiff's residual functional capacity, as well as Plaintiff's testimony that she went grocery shopping once a month, shopped online, handled her own finances, socialized over telephone, watched television, read and listened to books, and cared for her dog. (R. at 25, citing R. at 286-290.) Consequently, the ALJ found that Plaintiff's "ability to perform these activities of

daily living further support[ed] [her] ability to perform the work described in the residual functional capacity[.]" (R. at 25.)

Upon review, the undersigned finds the ALJ did not cherry-pick or mischaracterize the evidence supporting her findings but gave a thorough and exhaustive analysis of the longitudinal record, including Dr. Vedina's own treatment notes, when she evaluated Dr. Vedina's medical opinions. Subsequently, it was not unreasonable for the ALJ to discount Dr. Vedina's medical opinions based on their inconsistency with the medical record and lack of supporting explanation. It was proper, pursuant to the regulatory framework, for the ALJ to note the inconsistencies between the medical record and Dr. Vedina's opinion that Plaintiff would be unable to perform certain work-related activities and to conclude that Dr. Vedina offered insufficient support for her assessed limitations. (R. at 27.) Indeed, the regulations specify that "the more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. §§ 404.1527(c)(3); 416.927(c)(3). The ALJ explained that Dr. Vedina's findings were not well-supported by her own treatment notes, namely, the February 2020 treatment note in which Plaintiff reported her edema was improving and she was no longer in pain as a result.

The undersigned finds that the ALJ sufficiently articulated how she considered the supportability and consistency of the medical opinion and why—based on the evidence—she reached the particular conclusion that Dr. Vedina's opinion was less persuasive. Therefore, the Court finds that the ALJ did not err.

## V. CONCLUSION

While Plaintiff may disagree with the way in which the ALJ weighed the medical opinions under the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c), it is not this Court's role to re-weigh conflicting opinions or substitute its judgment for that of the ALJ. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (explaining that where the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence and resolve conflicts). Accordingly, the undersigned finds that the ALJ did not err in weighing the aforementioned medical opinions and that her decision was supported by substantial evidence. *See Hendrix v. Astrue*, No. 1:09-CV-01283-HFF, 2010 WL 3448624, at *2 (D.S.C. Sept. 1, 2010) (citing *Koonce v. Apfel*, No. 98-1144, 1999 WL 7864, at *2 (4th Cir. Jan. 11, 1999) (noting that an "ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." (citations omitted)).

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 16) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar**

**you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                              /s/ *MRC*

                                                             Mark R. Colombell
                                                            United States Magistrate Judge

Richmond, Virginia
Date: December 6, 2022